UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOY SKILES, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-CV-02708-NCC |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Joy Skiles ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 17), and Defendant filed a brief in support of the Answer (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on August 18, 2014, and she filed her application for SSI on August 19, 2014 (Tr. 100, 101, 156–72).[1] Plaintiff was denied initially on November 3, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on November 17, 2014 (Tr. 105–11, 112–13). After a hearing, by decision dated November 23, 2016, the ALJ found Plaintiff not disabled (Tr. 17-31). On October 18, 2017, the Appeals

---

[1] Plaintiff previously applied for disability benefits in 2005 and was denied (Tr. 72–79).

Council denied Plaintiff's request for review (Tr. 1–12). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 16, 2014, the alleged onset date (Tr. 22). The ALJ found Plaintiff has the severe impairments of degenerative disc disease, obesity, right side carpal tunnel syndrome, seizures, and peripheral neuropathy,[2] but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[3] with the following limitations (Tr. 23). She can occasionally climb ladders, ropes, and scaffolds (*Id.*). She must avoid all exposure to hazards such as dangerous machinery and unprotected heights, and she is limited to work that does not require driving (*Id.*). Plaintiff can frequently kneel, stoop, crouch, and crawl (*Id.*). She can frequently grip, handle, and feel with the right upper extremity (*Id.*).

The ALJ found Plaintiff unable to perform any past relevant work (Tr. 26). The ALJ determined that there are jobs that exist in significant numbers in the national economy that

---

[2] Neuropathy is a disease affecting the peripheral nervous system. *See Stedman's Medical Dictionary*, 601870 (2014). The peripheral nervous system is the part of the nervous system external to the brain and spinal cord from their roots to their peripheral terminations. *Id.* at 893430.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b), 404.1567.

Plaintiff can perform, including an office helper, laundry worker, and hand packager (Tr. 26–27). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 27). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

# IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises four issues. First, Plaintiff argues broadly that the ALJ's decision failed to properly evaluate peripheral neuropathy (Doc. 17 at 4).[4] Second, Plaintiff asserts the ALJ failed to properly consider her obesity at Step 3 and when formulating the RFC (*Id*. at 5). Third, Plaintiff argues the RFC is not supported by any medical evidence and lacks sufficient rationale (*Id*.). Finally, Plaintiff argues the ALJ failed to make a proper credibility determination (*Id*. at 10). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. Obesity

Plaintiff argues the ALJ erred both at Step 3 and in formulating the RFC by failing to adequately factor obesity into her decision (Doc. 17 at 5). The SSA recognizes that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. § 404, Subpt. P, App'x 1, § 1.00(Q). *See also* SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). Thus, at all stages of the sequential evaluation process, including the RFC determination, "adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. 404, Subpt. P, App'x 1, § 1.00(Q). However, the Eighth Circuit Court of Appeals has held that "[w]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid

---

[4] In Plaintiff's very short argument on this point, which consists of a few sentences, Plaintiff refers generally to the ALJ's opinion and does not discuss with specificity the portions of the opinion in which Plaintiff believes the ALJ erred (Doc. 17 at 4–5). The Court will address peripheral neuropathy where appropriate throughout this decision. As evident from the hearing transcript, Plaintiff and her attorney equate the neuropathy with numbness and tingling in Plaintiff's legs and hands (*see*, *e.g.*, Tr. 37).

reversal." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)).

The Court finds no reversible error in the ALJ's Step 3 analysis. Plaintiff states, in conclusory fashion and without elaboration, that the ALJ should have considered the combined effects of degenerative disc disease and obesity in determining whether Plaintiff's impairments met or equaled 20 CFR Part 404, Subpart P, Appendix 1, § 1.04, Listing of Impairments.[5] However, Plaintiff provides no support for this argument. As the Court discusses more below, Plaintiff cites to no objective or subjective evidence demonstrating that Plaintiff's obesity "increases[s] the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5. In fact, the agency's policy interpretation ruling specifically states:

> *[W]e will not make assumptions* about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record.*

*Id.* at 6 (emphasis). Here, the ALJ and Court would have to make such assumptions to come to the conclusion Plaintiff so desires. This is not warranted under the law. *See*, *e.g.*, *Lewis v. Astrue*, No. 4:10CV1131 FRB, 2011 WL 4407728, at *23 (E.D. Mo. Sept. 22, 2011) ("[I]t is plaintiff's burden to establish medical equivalency. Other than the conclusory statement in his brief, he offers no medical evidence to support his statement that the combined effect of his impairments [of degenerative disc disease and obesity] equaled the requirements of Listing 1.04."). The ALJ concluded that the severity of Plaintiff's disc disease did not meet

---

[5] Section 1.04 relates to disorders of the spine, a sub-category of disorders of the musculoskeletal system. Plaintiff does not challenge the ALJ's conclusion that Plaintiff's degenerative disc disease, when considered on its own, failed to meet Listing 1.04 (*see* Doc. 17 at 5).

-7-

the listing because there was no evidence of nerve root compression, spinal arachnoiditis, or spinal stenosis on an MRI, and "her gait and station showed she was able to ambulate effectively" (Tr. 23, 349, 381, 404–09).[6] *See Simmons v. Colvin*, No. 4:14-CV-1670 NAB, 2015 WL 7758373, at *4 (E.D. Mo. Dec. 2, 2015) (substantial evidence supported ALJ's determination that Plaintiff's degenerative disc disease did not meet Listing 1.04 when considered in combination with obesity because, despite some discrepancies in MRI findings, MRI results did not support degenerative disc disease met listing on its own and physician evaluations demonstrated normal findings and normal range of motion).

While the ALJ did not separately discuss Plaintiff's obesity at Step 3, she specifically concluded no impairment or combination of impairments met or medically equaled a listing and cited to Listing 1.04 (Tr. 23). In addition, the ALJ discussed obesity in formulating her RFC. "Because the ALJ specifically took [Plaintiff's] obesity into account in [her] evaluation, we will not reverse that decision." *Heino*, 578 F.3d at 881–82; *see also Karlix v. Barnhart,* 457 F.3d

---

[6] Section 1.00 of Appendix 1, which addresses disorders of the musculoskeletal system, including disorders of the spine, states:

> Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis . . . . Inability to ambulate effectively means an extreme limitation of the ability to walk, *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. 404, Subpt. P, App. 1, § 1.00(B)(2)(a), (b). While Plaintiff argues generally that "obesity also interferes with the ability to move," Plaintiff offers no support either objectively or subjectively that she was unable to ambulate due to her combined disc disease and obesity (Doc. 17 at 5). *See Brown v. Astrue*, No. 4:08-CV-483 CAS, 2009 WL 88049, at *13 (E.D. Mo. Jan. 12, 2009), *aff'd*, 356 F. App'x 906 (8th Cir. 2009) (affirming ALJ's decision that plaintiff's combined lumbar impairment and obesity did not meet Listing 1.04 when objective medical findings demonstrated no motor loss, atrophy, or significant muscle weakness, and plaintiff exhibited no limp and did not require use of assistive device for walking).

742, 746 (8th Cir. 2006) ("[t]he fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion."); *Andrus v. Astrue*, No. 4:09-CV-990 CDP, 2010 WL 3526259, at *9 (E.D. Mo. Sept. 3, 2010) (finding no error when ALJ did not make an express ruling on effects of obesity in combination with a § 1.04 impairment because ALJ addressed obesity elsewhere in decision). Moreover, for the reasons discussed throughout this opinion, any error in failing to separately analyze obesity at Step 3 was harmless, as the record does not support Plaintiff's argument.

Furthermore, as is discussed below, the Court finds the ALJ appropriately considered obesity in formulating the RFC. Therefore, Plaintiff's argument on that point is without merit.

**B. Evaluation of Plaintiff's Subjective Complaints**

Next, Plaintiff asserts that the ALJ failed to make a proper credibility determination and also did not properly establish her RFC (Doc. 17 at 5–13). The Court will first address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[7] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's

---

[7] As Defendant notes, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Plaintiff's subjective complaints, when viewed with the record as a whole, are based on substantial evidence.

As a preliminary matter, Plaintiff argues broadly that the ALJ's "decision fails to consider the factors set forth in [SSR 16-3]," parallel to those articulated in this Circuit's *Polaski* decision (Doc. 17 at 11). Though the ALJ did not specifically cite *Polaski*, she considered relevant factors. For example, she examined the intensity, persistence, and limiting effect of Plaintiff's functioning; discussed Plaintiff's work history; discussed the effectiveness of medication; and discussed Plaintiff's daily activities (Tr. 24–25). *See Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004) (failure to specifically cite *Polaski* not basis to set aside ALJ's decision where decision is supported by substantial evidence); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). The Court finds the ALJ properly considered relevant factors and regulations in her decision (*see* Tr. 24–25).

First, the ALJ reviewed the objective medical evidence and determined it failed to support the severity of Plaintiff's alleged symptoms (Tr. 24). Specifically, she found that the "objective medical evidence showed Plaintiff received conservative management for her chronic

conditions" (*Id.*). For example, though Plaintiff had a documented history of seizures from childhood, the ALJ noted the course of treatment showed a good response to medication management (Tr. 25, 317, 324–25, 328, 348). *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling). The ALJ also noted that Plaintiff's seizures and staring episodes were relatively infrequent, and she was largely able to drive throughout the relevant timeframe (Tr. 24–25, 324). Moreover, despite a more recent seizure in early 2016 and self-reports that she felt "odd," Plaintiff's neurological and physical findings were within normal limits (Tr. 25, 379–81). And while Plaintiff complained of dizziness, the records substantiated that this was likely related to acute cerumen impaction (a build-up of ear wax) (Tr. 25, 285, 293, 330). Likewise, the ALJ concluded Plaintiff's headaches responded well to conservative treatment, finding an adjustment to her medication generated a good response (Tr. 25, 324, 328). The ALJ concluded the evidence demonstrated the headaches and seizures did not suggest further treatment (Tr. 25). Even so, the ALJ imposed additional non-exertional limitations in her RFC to provide for Plaintiff's safety in the workplace due to her history (*See* Tr. 25). Similarly, the ALJ recognized Plaintiff was given a wrist splint for her right-sided carpal tunnel syndrome and that the carpal tunnel results in manipulative and receptive limitations (Tr. 25). Plaintiff testified she wears the splint most nights but not at all times during the day (Tr. 51). However, similar to the seizures and headaches, the ALJ concluded "the conservative treatment of this condition with a wrist splint did not suggest further limitations" (*Id.*; Tr. 350). An ALJ may properly consider Plaintiff's conservative treatment history in her determination of a plaintiff's credibility. *See*, *e.g.*, *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012); *Black v. Apfel*,

-11-

143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment and effectiveness of medication supported ALJ's decision to discredit subjective complaints of pain). Furthermore, as discussed above, that ALJ determined that repeated normal findings in the records contradicted Plaintiff's complaints regarding the severity of her degenerative disc disease (Tr. 23, 25). *See Pearsall*, 274 F.3d at 1218 ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.").

Moreover, despite Plaintiff's arguments to the contrary, the ALJ did evaluate and discuss Plaintiff's peripheral neuropathy. Plaintiff argues that the ALJ did not discuss the neuropathy beyond Step 2 of her analysis and failed to explain what limitations are caused by the severe impairment (Doc. 17 at 5). However, the ALJ specifically discussed the objective medical evidence indicating Plaintiff had sensory deficit in her legs and numbness (Tr. 25). While Plaintiff exhibited some mild tandem gait problems on one occasion, the ALJ noted her gait and station were otherwise normal and her neurological and motor functioning was unremarkable (Tr. 25, 324). On another occasion after Plaintiff reported numbness, the ALJ noted her physical exam was normal, she had a normal gait and station, and negative Tinel signs (Tr. 25, 361).[8] In fact, while Plaintiff testified that she experienced numbness and tingling in her hands and legs, a review of her medical records demonstrates repeated negative Tinel's signs (Tr. 354, 361, 368), and her neurologist noted that there were no electrocardiogram studies available to corroborate the reported diagnosis (Tr. 326). She had multiple normal neurological examinations throughout 2014 through 2016 (Tr. 24, 325, 349, 379). In addition, and as the ALJ notes, the objective medical evidence also demonstrates repeated normal gait, coordination, strength, and motor or

---

[8] Tinel sign is "a sensation of tingling, or of 'pins and needles,' felt at the lesion site or more distally along the course of a nerve when the latter is percussed," or tapped. *Stedman's Medical Dictionary*, 820740 (2014).

range of motion findings (Tr. 286, 298, 324, 327, 331, 349, 354, 360–61, 367–68, 380). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

To the extent Plaintiff suggests that she did not receive medical care because she did not have insurance (Doc. 17 at 3), in some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. *See Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). In this matter, however, the record does not reflect that Plaintiff sought treatment offered to indigents other than going to an income-based clinic/hospital.[9] *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents). There is no substantial evidence that Plaintiff's doctors recommended more aggressive treatment than she received or that she had to forego any treatment options based on a financial inability to pay. For example, while Plaintiff suggested she might need surgery for her right carpal tunnel syndrome, she conceded her doctors have not actually suggested it (Tr. 51). *Black*, 143 F.3d at 386 (lack of surgery supported, in part, ALJ's decision to discredit subjective complaints of pain). Moreover, while Plaintiff testified she needed a brain scan (Tr. 57), the medical records demonstrate her neurologist said at one point she did not need one (Tr. 324, 328, 382). *See Goff*, 421 F.3d at 793 (finding it significant that the record did not show a claimant was denied treatment or that she was not provided with alternative, less expensive treatments when needed).

Second, the ALJ discussed Plaintiff's reported activities of daily living. The ALJ recognized Plaintiff expressed a variety of limitations and stated she has some help from family

---

[9] Plaintiff testified she was denied Medicaid (Tr. 36).

(Tr. 24). However, the ALJ also noted Plaintiff reported shopping, lifting fifteen pounds, doing laundry, doing some crafting, driving, and "usually" preparing meals (Tr. 24, 47–48). Upon further review of Plaintiff's activities of daily living report, the Court finds that this additional evidence supports the ALJ's determination. Specifically, Plaintiff also reported the ability to handle her personal care, clean a room a day, do a load of laundry every other day, go outside daily, shop for groceries and medicine, pay bills, regularly go to church and meet her husband for lunch, and play games or use a computer (Tr. 206–13). In August 2014, she reported to her neurologist that she drove and managed bills and finances (Tr. 326). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"); *Steed*, 524 F.3d at 876 (finding the ALJ did not err in discounting the plaintiff's credibility where the plaintiff reported she could only stand for 15 minutes, sit for one to two hours, and lift half gallon of milk, but she also reported she could perform housework, take care of child, cook, and drive). Moreover, Plaintiff testified that after the alleged disability onset date, she received some unemployment and briefly looked for other work, but "just didn't have any luck" and, upon not feeling well, "decided I didn't think I could do it" (Tr. 42). *See Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (claimant's job search during the relevant period "undermines his claim that he was unable to work").

Plaintiff maintains the ALJ's credibility determination was improper, arguing she disregarded symptoms because they were not substantiated by objective medical evidence (Doc. 17 at 10–12). However, for the reasons stated, the Court finds the ALJ's credibility determination was proper based on the entire record, was not based "solely" on a lack of objective medical evidence as Plaintiff suggests, and is supported by substantial evidence. *See*

*Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider in discounting allegations of disabling pain).

**C. RFC Determination**

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker*, 363 F.3d at 783 (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)); *see also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support

the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591. However, there is no requirement that an RFC determination be supported by a specific medical opinion or that an RFC must be linked in each of its components to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

Plaintiff argues specifically that the ALJ failed to consider Plaintiff's obesity in the RFC according to SSR 02-1p (Doc. 17 at 5). In particular, Plaintiff suggests the ALJ erred because she did not consider obesity "causes more than edema; obesity also interferes with the ability to move" (*Id*.). Plaintiff further states the "RFC assessment must contain any functional limitations resulting from the obesity" (*Id*.). However, Plaintiff's argument fails to acknowledge the lack of support in the record for the ALJ to have imposed any further limitations. Plaintiff neither puts forth any arguments regarding what additional functional limitations resulted from Plaintiff's obesity nor cites to any objective or subjective evidence in support of any potential limitations. In fact, Plaintiff did not testify at the hearing that her obesity limited her ability to function in any manner. Moreover, a review of the record does not support Plaintiff's argument that she needed further limitations because obesity restricted her movements; the records make no mention of any physician-imposed ambulatory restrictions or self-reported complaints that her obesity interferes with her ability to move (*see generally* Tr. 285–386). Furthermore, the ALJ specifically referenced Plaintiff's obesity in formulating her RFC (Tr. 25). She then concluded the impairments, including obesity, "reasonably limit the claimant to light exertional level with postural limitations" and "did not impose greater limitations than those set forth above" (*Id*.). The ALJ included postural limitations in her RFC, including kneeling, stooping, crouching, crawling and climbing (Tr. 23). For these combined reasons, the Court finds a more robust discussion of obesity was not warranted under the circumstances of the case. *See Heino*, 578

F.3d at 881–82 (no reversal when ALJ referenced obesity in the evaluation); *McMillan v. Astrue*, No. 4:11-CV-1948-NAB, 2013 WL 1294542, at *9 (E.D. Mo. Mar. 28, 2013) (ALJ did not err in failing to further discuss obesity in RFC formulation because "in concluding that [plaintiff's] obesity was severe, the ALJ must not only have considered [plaintiff's] obesity but found it sufficiently limiting" to justify limiting plaintiff to light, unskilled work based on the overall record).

For similar reasons, the Court further finds the ALJ's purported failure to adequately discuss peripheral neuropathy in formulating the RFC does not warrant remand (Doc. 17 at 4–5). As the Court discussed above, the ALJ did discuss peripheral neuropathy in assessing credibility and ultimately formulating the RFC. Plaintiff argues the ALJ failed to explain which specific RFC limitations were caused by her peripheral neuropathy (*Id.*).[10] However, an ALJ is not required to list each function which she includes in a claimant's RFC, followed by the specific medical evidence which supports a finding that the claimant can or cannot engage in that function. *See Wildman*, 596 F.3d at 966 ("[A]n ALJ's failure to cite specific evidence does not indicate such evidence was not considered."); *Davis v. Colvin*, No. 14-05075, 2015 WL 1964791, at *5 (W.D. Mo. May 1, 2015) ("SSR 96-8P does not require an ALJ to list each RFC limitation followed by the specific evidence that supports it; such a requirement would undermine the 'all relevant evidence' standard and would result in duplicative discussions of the same evidence."); *Peterson v. Colvin*, No. 13-0329-CV-W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013) ("Plaintiff overstates the law by contending there must be medical evidence

---

[10] Plaintiff appears to make a similar argument regarding the ALJ's discussion of her degenerative disc disease, stating the ALJ does not include rationale (Doc. 17 at 7). However, the ALJ discussed Plaintiff's MRI findings, specifically included restrictions for kneeling, stooping, crouching, crawling and climbing, and stated "the objective evidence suggested that the claimant's back conditions . . . did not impose greater limitations than those set forth above" (Tr. 23, 25). The cited cases support the propriety of the ALJ's decision on this point.

that precisely supports each component of the RFC"). By limiting Plaintiff to light work and including further limitations for gripping, handling, feeling, and climbing (Tr. 23), the ALJ appropriately accounted for Plaintiff's peripheral neuropathy, particularly in light of the normal motor, gait, and Tinsel findings discussed previously. Thus, even assuming the ALJ erred by failing to re-discuss neuropathy later in the same section of her decision, any error was harmless.

Next, Plaintiff argues generally that RFC is not supported by "any" medical evidence and lacks sufficient rationale. Relying on MRI findings and a general peripheral neuropathy diagnosis, Plaintiff argues "[i]t is not clear from the raw medical evidence that someone with these findings can stand and walk 6 hours in an 8 hour day" (Doc. 17 at 7). Plaintiff argues the medical record "appears to support" that Plaintiff has chronic pain resulting from her neuropathy which significantly impacts her ability to sit, stand, and walk (*Id*. at 7–8). While the ALJ relied on MRI results in making her decision, Plaintiff points to other findings within the MRI that Plaintiff argues support a limitation on her ability to sit, stand, and walk. However, to the extent Plaintiff identifies records that support her allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). The ALJ recognized Plaintiff's self-reported problems with walking and sitting (Tr. 24) but concluded based on the objective medical evidence that "her gait and station showed that she was able to ambulate effectively" (Tr. 23). Based on the records before the ALJ, Plaintiff's own physicians placed no such sitting, standing, or walking restrictions on her and consistently reported normal findings. *See Hovis v. Colvin*, No. 1:15 CV 73 JMB, 2016 WL 4158867, at *9 (E.D. Mo. Aug. 5, 2016) (finding it significant that no treating source

indicated plaintiff was unable to work or imposed functional limitations on plaintiff's capacity to work); *see also Buford*, 824 F.3d at 796 (ultimate burden on claimant to establish RFC).

The Court further finds under the circumstances of this case that the ALJ was not required to seek a medical opinion from a treating physician or consultative examiner, as Plaintiff argues (Doc. 17 at 10). *See*, *e.g.*, *Stallings v. Colvin*, No. 6:14-CV-03273-MDH, 2015 WL 1781407, at *3 (W.D. Mo. Apr. 20, 2015) (citing *Tellez,* 403 F.3d at 956–57) ("Eighth Circuit case law reveals that an ALJ can appropriately determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record."). The lack of a medical opinion evaluating the severity and limiting effects of Plaintiff's impairments does not in this case necessitate a finding that the ALJ failed to fully and fairly develop the record. Although it is an ALJ's duty to develop the record, it is the plaintiff's responsibility to provide medical evidence to show that she is disabled. *See* 20 C.F.R. §§ 404.1512, 416.912. Ultimately, the claimant bears the burden of proving disability. The ALJ is required to order a consultative examination only if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1519a(b), 416,919a(b). In the instant case, there was sufficient medical evidence for the ALJ to determine whether Plaintiff is disabled and therefore no need for the ALJ to further develop the record. The medical records evidenced improvement with conservative treatment and otherwise normal findings. The record provides a sufficient basis for the ALJ's decision, and she was not required to further develop the record. *See Hovis*, 2016 WL 4158867, at *12–13 (ALJ not required to seek consultative examination and appropriately relied solely on medical records when records demonstrated improvement with conservative treatment); *Peterson*, 2013 WL 6237868, at *4 (holding

"[e]vidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities").

Therefore, the Court finds the ALJ's RFC determination was based on some medical evidence, as the law requires. As discussed above, the ALJ properly addressed the consistency of Plaintiff's subjective complaints and, in doing so, evaluated Plaintiff's medical record and her activities of daily living. The ALJ specifically referred to several objective measures during the relevant period, including normal objective findings, to explain why Plaintiff's physical condition was not disabling. The ALJ appropriately considered Plaintiff's conservative treatment and responsiveness to treatment when evaluating her subjective complaints and imposing limitations. "We may not reverse merely because we would have decided differently, or because substantial evidence supports a contrary outcome." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). The evidence substantiated the ALJ's RFC determination, and the ALJ's decision fell within a reasonable "zone of choice." *Id*.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 7th day of March, 2019.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE